IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                             Plaintiff,

v.

KELLY TREAS,

                             Defendant.

Case No. 20-20039-01-DDC

## MEMORANDUM AND ORDER

Defendant Kelly Treas has filed a pro se[1] Motion for Compassionate Release (Doc. 54). Ms. Treas's motion also requests that the court appoint her counsel and seal documents attached to her motion. The government filed a Response (Doc. 58), opposing Ms. Treas's request. Ms. Treas hasn't replied, and the time to do so has passed. For reasons explained below, the court grants the part of Ms. Treas's motion asking to seal medical records but denies all other requests in her motion. (Doc. 54). It begins with the relevant background.

### I.      Background

On September 9, 2021, Ms. Treas pleaded guilty to conspiracy to distribute or possess with intent to distribute fifty grams or more of methamphetamine, violating 21 U.S.C. § 846. Doc. 43 at 1. On February 24, 2022, the court sentenced Ms. Treas to 204 months' imprisonment—a sentence well below the guideline range—and five years of supervised release. Doc. 51 at 2–3; *see also* Doc. 46 at 29, 38 (calculating a guideline range of 360 months to life if

---

[1]      People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

the offense level was 40 and calculating a guideline range of 262 to 327 months if the offense level was 35).  Ms. Treas's projected release date is April 10, 2035.  *See* Kelly Treas (Reg. No. 09513-509), https://www.bop.gov/inmateloc// (last visited Apr. 9, 2024).

Some 17 months after sentencing, Ms. Treas filed her Motion for Compassionate Release in July 2023.  Doc. 54 at 1.  Ms. Treas argues she is at a greater risk of death if she contracted COVID-19 because she has hypothyroidism, Hashimoto's disease, endometriosis, hypoglycemia, arthritis, post traumatic stress disorder (PTSD), anxiety, attention deficit hyperactivity disorder (ADHD), and a BMI of 40, amounting to an extraordinary and compelling reason to reduce her sentence.  *Id.* at 5.  Ms. Treas also argues that her stepfather's lung cancer diagnosis and her daughter's mental health diagnosis amount to extraordinary and compelling reasons to reduce her sentence so she can assist in her daughter's care.  *Id.*

With this background in mind, the court begins its analysis with Ms. Treas's request for compassionate release.

## II.        Compassionate Release Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.  One such exception is contained in [18 U.S.C.] § 3582(c)(1)."  *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (citation and internal quotation marks omitted).  Even after it has imposed a term of imprisonment, the court may modify that term:

> upon motion of the defendant after [1] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A).  The exhaustion requirement, our Circuit later held, is a claim-processing rule that the government may waive or forfeit.  *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

Aside from this exhaustion requirement, the court applies a three-step analysis to the substance of compassionate release motions filed under § 3582(c)(1)(A).  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).  The court may grant a motion for reduction sentence only if it:

1. finds that extraordinary and compelling reasons warrant such a reduction;

2. finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

3. considers the factors . . . in [18 U.S.C.] § 3553(a), to the extent that they are applicable.

*Id.*; *see United States v. Wesley*, 60 F.4th 1277, 1282 (10th Cir. 2023) (citing the Sentencing Reform Act of 1984 and explaining history of compassionate release statute).  The court may grant relief "only if all three prerequisites are satisfied," and, accordingly, "the three steps [can] be considered in any order."  *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

## III.    Analysis

The court denies Ms. Treas's motion for two reasons:  (1) Ms. Treas failed to exhaust administrative remedies for her medical issues and (2) assuming Ms. Treas has established extraordinary and compelling reasons for compassionate release, the § 3553(a) sentencing factors do not favor her release.  The court explains these conclusions, below.

### A.    Exhaustion

The First Step Act subjects Ms. Treas's Motion for Compassionate Release to certain prerequisites.  First, a motion seeking compassionate release under § 3582(c)(1)(A) must "request that the BOP file a compassionate-release motion on [her] behalf to initiate [her]

administrative remedies." *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020)
(citations omitted); *see also* 18 U.S.C. § 3582(c)(1)(A).  And the court "may not modify a term
of imprisonment once it has been imposed" unless (1) "the defendant has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the
defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden
of the defendant's facility[.]"  18 U.S.C. § 3582(c)(1)(A).  When a defendant moves for
compassionate release, she may not raise grounds for compassionate release to the court if she
has not presented those grounds to the warden.  *See United States v. Moreno*, 519 F. Supp. 3d
937, 939–40 (D. Kan. 2021).

In an unpublished opinion, our Circuit has held that defendants must exhaust
administrative remedies for each issue they later take to court.  *United States v. Gieswein*, 832 F.
App'x 576, 577– 78 (10th Cir. 2021) (holding that, because defendant's "request to the warden
did not include COVID-19 as a reason for compassionate release," the district court properly
dismissed his COVID-19 argument for failure to exhaust administrative remedies).  The court
previously has followed the *Gieswein* holding.  *See United States v. Nash*, No. 19-40022-01,
2021 WL 678135, at *2 (D. Kan. Feb. 22, 2021) ("While *Gieswein* is an unpublished opinion
that lacks controlling authority, the court finds it persuasive."); *see also United States v.
Everhart*, No. 18-20031-01, 2022 WL 6101441, at *2 (D. Kan. Oct. 7, 2022).

The government notes that Ms. Treas's original request to the warden of her facility made
no mention of her medical concerns.  Doc. 58 at 5.  Instead, Ms. Treas's original request only
referenced her family's various medical concerns.  *See* Doc. 54-2 at 3.  In her request, Ms. Treas
stated:

> I'm . . . requesting to get Compassionate Release due to the fact that my step
> father has lung cancer, and him and my mother have my daughter, since my

> incarceration my daughter has started self harming, and developed several mental health issues, making her a high priority child, with my mom['s] focus needed to take care of my step dad I need to be home to help her with my daughter and with my step dad.  Thank you.

*Id.*  As a result, Ms. Treas failed to exhaust her administrative remedies as they apply to her personal medical concerns.  The court thus denies Ms. Treas's request for compassionate release based on her own medical concerns because she's failed to exhaust this request.  Doc. 54 at 5.

In contrast, Ms. Treas submitted a request for compassionate release to her facility's warden based on her family circumstances.  Doc. 54-2 at 3.  She did so on May 5, 2023.  *Id.*; Doc. 54 at 3.  The warden received Ms. Treas's request on May 10, 2023 and he didn't act on the request within 30 days.  *See* Doc. 54-2 at 3 ("Good morning[.]  We have received your request and it has been forwarded to the appropriate department for disposition.  Thank you.").  Ms. Treas waited the full 30 days before filing her motion with the court.  Doc. 54 at 6 (dated June 26, 2023, and filed July 5, 2023).  Ms. Treas thus has exhausted her administrative rights to appeal to the Bureau of Prisons based on her family circumstances.  *Id.*

The court next proceeds to the merits of compassionate release based on family circumstances.  This merits analysis requires the three steps articulated above but the court considers only step three:  the § 3553(a) factors.  So, assuming without deciding that Ms. Treas meets the first two steps, the court proceeds to its analysis of § 3553(a)'s six factors.

**B.**      **Sentencing Factors in § 3553(a)**

Ms. Treas's motion fails at the third step of the § 3582(c)(1)(A) analysis.  Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider the relevant sentencing factors identified in § 3553(a).  Those factors include:  (1) defendant's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offenses; (3) the need for a sentence to provide just punishment, promote

respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

Here, Ms. Treas asks the court to modify her sentence by reducing it to time served. *See* Doc. 54 at 5. The government asserts that granting Ms. Treas's request "would seriously diminish the nature and seriousness of her offense and the need for her sentence to continue to provide just punishment and otherwise promote respect for the law." Doc. 58 at 19. The court agrees.

The court sentenced Ms. Treas to 204 months' imprisonment and a term of five years supervised release—a sentence well below the range calculated by the Sentencing Guidelines. Doc. 51 at 2; *id.* at 38 (calculating a Guidelines range of 262–327 months). Ms. Treas has served a small portion of this sentence; her current release date is April 10, 2035. Courts have held that a defendant's circumstances, in light of § 3553(a), did not warrant relief far more modest than Ms. Treas's request.[2] To grant Ms. Treas's Motion for Compassionate Release would reduce the gravity of sentence dramatically. Only a substantial shift in the court's analysis of the relevant § 3553(a) factors since sentencing could justify that outcome.

But Ms. Treas's circumstances can't support a shift so substantial. Several significant facts supporting Ms. Treas's original sentence—including the nature and circumstances of Ms.

---

[2]    *See United States v. Rourke*, No. 15-10085-02, 2021 WL 3129599, at *3–4 (D. Kan. July 23, 2021) (holding that a defendant only serving 26 months out of a 60-month sentence would not reflect that seriousness of the defendant's conduct, even though the defendant's children had lost a parent); *United States v. Belair*, No. 17-40043-02, 2021 WL 4552114, at *3 (D. Kan. Oct. 5, 2021) (finding § 3553(a) factors couldn't support compassionate release where defendant's "projected release date [was] more than eight years away.")

Treas's offense conduct and criminal history—continue to support a term of imprisonment greater than the immediate release she seeks. *See, e.g.*, 18 U.S.C. § 3553(a)(1)–(2) (including "the nature and circumstances of the offense" and the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"). Ms. Treas committed a grave felony offense. She pleaded guilty to conspiracy to distribute and possession with intent to distribute more than 50 grams of methamphetamine. Doc. 46 at 14–15. And, at sentencing, Ms. Treas had a final criminal history of V, with 11 criminal history points. *Id.*

Another factor—the need for rehabilitative services—also weighs against granting Ms. Treas compassionate release. While in custody, Ms. Treas has had multiple discipline infractions. Doc. 58 at 18. The court thus concludes that Ms. Treas requires additional rehabilitative services, and compassionate release wouldn't serve this § 3553(a) factor.

The court also must consider whether Ms. Treas's extraordinary and compelling reasons affect its § 3553(a) analysis. *Hald*, 8 F.4th at 947 ("[T]he facts allegedly establishing extraordinary and compelling reasons for release. . . . are relevant to the § 3553(a) analysis."). The court is sympathetic to the health issues of Ms. Treas's stepfather and daughter. But these challenges don't change the court's § 3553(a) analysis of Ms. Treas, her crimes, and her appropriate sentence.

In sum, the court concludes that the § 3553(a) factors don't favor Ms. Treas's release. The court thus denies Ms. Treas's request for compassionate release.

## IV.        Appointment of Counsel

Ms. Treas also requests that the court appoint her an attorney to help her litigate her compassionate release request. Doc. 54 at 6. "There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]" *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir.

2008).  Ms. Treas's filings establish that she can present her claims effectively.  Doc. 54; *see Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (reciting "the litigant's ability to present his claims" as a factor to consider when deciding whether to appoint counsel).  In its discretion, the court thus declines to appoint Ms. Treas counsel.

The court next addresses Ms. Treas's request that the court seal certain documents attached to her motion.

## V.      Sealing

Ms. Treas's motion asks the court to seal her proposed release plan and the medical records of her stepfather and daughter.  Doc. 54 at 5.  These documents are on the court's docket as Doc. 54-1 and 54-2.  The court considers Ms. Treas's request, beginning with the relevant legal standard, below.

Federal courts have long recognized a common-law right of access to judicial records. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).  The party seeking to overcome the strong presumption of public access must show that countervailing interests heavily outweigh the public interest in access to the judicial record.  *United States v. Bacon*, 950 F.3d 1286, 1293 (10th Cir. 2020) (quoting *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012)).  To overcome this strong presumption favoring public access, the party must articulate a real and substantial interest that justifies depriving the public of access to the records that inform the court's decision-making process.  *Colony Ins. Co.*, 698 F.3d at 1241; *see also King v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, No 21-2049, 2022 WL 486550, at *1 (D. Kan. Feb. 17, 2022) (denying motion to seal medical information because defendant had not explained why disclosure of such information would cause harm or how limited redaction wouldn't suffice to protect any real and substantial privacy interest).

Starting with Ms. Treas's proposed release plan, this document contains Ms. Treas's medical information—information no longer pertinent to her grounds for release since she didn't exhaust this claim.  Doc. 54-1.  Ms. Treas also requests that the court seal her stepfather's and daughter's medical records.  Doc. 54-2.  Third-party medical health information is private and rarely a matter of public concern.  *See Stachmus v. Guardian Life Ins. Co. of Am.*, 853 F. App'x 268, 273 (10th Cir. 2021) (granting request to seal based on personal medical information); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135–36 (10th Cir. 2011) (holding that a party's medical health records and other personal health information overcomes the public's right to access judicial records).  As the entire set of records contains personal health information of Ms. Treas's stepfather and daughter, two people who are not parties here, the entirety of the document should remain sealed.  The court thus grants Ms. Treas's request to seal her proposed release plan and family's medical records.

## VI.       Conclusion

As explained above, the court in part grants the sealing requests in Ms. Treas's Motion for Compassionate Release and denies the rest of Ms. Treas's Motion for Compassionate Release.  The court denies Ms. Treas's motion based on her health for failure to exhaust her administrative remedies within the Bureau of Prisons.  The court denies Ms. Treas's motion based on family circumstances as she failed to show that § 3553(a)'s sentencing factors support the immediate release she seeks.  The court also denies Ms. Treas's Motion to Appoint Counsel. In contrast, the court grants Ms. Treas's request to seal her proposed release plan and her family's medical records.  The court thus grants in part and denies in part Ms. Treas's motion (Doc. 54).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Kelly Treas's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), Motion to Appoint Counsel,

and Motion to Seal (Doc. 54) is granted and denied in part, as set out in this Order.  Defendant

Kelly Treas's Motion to Seal is granted.  The court orders Doc. 54-1 and Doc. 54-2 remain

sealed.

**IT IS SO ORDERED.**

**Dated this 8th day of May, 2024, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**

10